UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────────x
CONNIE S. GIBBS,                             :
                                             :
                          Plaintiff,         :
                                             :                **OPINION AND ORDER**
                                             :
     - against -                             :
                                             :                11 Civ. 2949 (ER)
IMAGIMED, LLC d/b/a OPEN MRI OF              :
WILLIAMSPORT (PA), WILLIAM WOLF, M.D.,       :
and JOHN KENNY,                              :
                                             :
                          Defendants.        :
──────────────────────────────────x

RAMOS, D.J.:

      This action alleges sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000(e), *et. seq*, and New York State Executive Law § 296(1)(a) ("NYSHRL").  Am. Compl., ¶¶ 17-27, Doc. 16.  Defendant William Wolf, M.D. ("Dr. Wolf") now moves pursuant to Rules 12(b)(2) and (5) of the Federal Rules of Civil Procedure to dismiss the claims against him on the basis of Plaintiff's failure to comply with the timely service requirements of Rule 4(m).  Doc. 38.  For the reasons set forth below, Dr. Wolf's motion to dismiss is GRANTED.

**I. Procedural History**

      Plaintiff Connie S. Gibbs ("Plaintiff") filed a Verified Complaint against her former employer, Imagimed, LLC, d/b/a Open MRI of Williamsport (PA) ("Imagimed"), and two managers of Imagimed, Dr. Wolf and John Kenny ("Kenny") (collectively "Defendants"), on May 2, 2011, alleging sexual harassment in the workplace in violation of Title VII.  Doc. 1.[1]  On

---

[1] On February 14, 2011, the United States Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a right-to-sue letter.  Am. Compl., Ex. 1.

July 7, 2011, Dr. Wolf filed a motion to dismiss the Complaint for failure to state a claim. Doc. 6. In his motion, Dr. Wolf's then counsel, Scott M. Salant ("Salant"), noted in his affirmation that "[Dr.] Wolf has never been served with the Summons and Verified Complaint in this matter . . . ." Doc. 8, ¶ 5.[2] On July 27, 2011, Plaintiff filed an Amended Complaint asserting an additional claim for sexual harassment in violation of the NYSHRL. Doc. 16. On July 28, 2011, Judge Vincent L. Briccetti, to whom this case was previously assigned, dismissed Dr. Wolf's motion as moot after the filing of the Amended Complaint. Doc. 17. On August 8, 2011, Defendants Imagimed, Kenny and Dr. Wolf filed a Verified Answer to the Amended Complaint, which contained as a First Affirmative Defense that "Plaintiff never served her Summons, Verified Complaint, and Verified Amended Complaint upon [Dr.] Wolf." Doc. 18, ¶ 9.

On January 6, 2012, the case was reassigned to the undersigned. Doc. 24. On April 17, 2012, Plaintiff's counsel contacted Salant to schedule Dr. Wolf's deposition. Salant Declaration ("Salant Decl."), Doc. 40, ¶ 3. Salant responded by stating that Dr. Wolf had not been served and therefore was not a party to the case; he also requested proof that Plaintiff had effectuated service upon Dr. Wolf. *Id.* On May 16, 2012, Plaintiff and Dr. Wolf appeared before the Court for a status conference. According to Dr. Wolf's recollection of events, Plaintiff admitted that she had failed to serve Dr. Wolf. *Id.* ¶ 4. On September 6, 2012, at a status conference, Plaintiff admitted that Dr. Wolf had not been served. *See id.* ¶ 5. Finally, at a pre-motion conference on November 7, 2012, Plaintiff once again admitted that she had not undertaken any efforts to properly serve Dr. Wolf.

---

[2] On September 11, 2012, the Court granted Salant's request to be relieved as Dr. Wolf's counsel due to a conflict of interest. Doc. 33.

On November 14, 2012, Dr. Wolf filed the instant motion pursuant to Rules 12(b)(2) and (5) of the Federal Rules of Civil Procedure, asserting lack of personal jurisdiction and insufficient service of process, respectively, and seeking to dismiss the claims against him on the basis of Plaintiff's failure to comply with the timely service requirements of Rule 4(m). Doc. 38.

**II. Applicable Law**

Rule 4(m) governs the dismissal of actions for untimely service of process and extensions of time in which service may be effected. The rule provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). If the plaintiff demonstrates good cause for the failure, then the court must grant additional time to serve, but if the plaintiff does not demonstrate good cause, then the court has discretion to either grant additional time or to dismiss the action. *Counter Terrorist Group U.S. v. New York Magazine*, 374 F. App'x 233, 234-35 (2d Cir. 2010); *Castro v. City of New York*, 05 Civ. 593 (LAK) (MHD), 2007 WL 3071857, at *5 (S.D.N.Y. Oct. 10, 2007), *report and recommendation adopted*, 05 Civ. 0593 (LAK), 2007 WL 3224748 (S.D.N.Y. Nov. 1, 2007).

A. <u>Mandatory Extension of Time for Good Cause</u>

The first issue the Court must resolve is whether or not Plaintiff has shown good cause for her failure to serve Dr. Wolf within the 120-day limit. In determining whether a plaintiff has shown good cause, courts weigh the reasonableness and diligence of the plaintiff's efforts to serve against the prejudice to the unserved defendants from the delay. *DeLuca v. AccessIT Group*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010). "Good cause is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." *Beauvoir v. U.S. Secret Serv.*, 234 F.R.D. 55, 56

3

(E.D.N.Y. 2006) (quoting *E. Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505 (S.D.N.Y. 1999)) (internal quotation marks omitted).  Thus, an attorney's "inadvertence, neglect, mistake or misplaced reliance does not constitute good cause." *Id.* (alteration and internal quotation marks omitted).  Additionally, "a mistaken belief" that service was proper does not establish good cause.  *Jonas v. Citibank, N.A.*, 414 F. Supp. 2d 411, 416 (S.D.N.Y. 2006) (citation omitted).

    Plaintiff's counsel here has not demonstrated good cause for his failure to properly serve Dr. Wolf.[3]  As an explanation for his failure to properly serve Dr. Wolf, Plaintiff's counsel explains that he "had to give up his office and practice at home because of ill health of his wife," who was suffering from a heart condition, and he had to take care of his two teenage daughters. Pl.'s Opp. Mem. 2.  Further, he notes that "[w]hile these problems may not rise to the level of 'good cause' legally, nevertheless the cause of a spouse suffering from [a] heart problem and the care of two teenage daughters weigh heavily upon one who has that problem cast upon him." *Id*. Accordingly, Plaintiff's counsel argues that "[t]he problems of a missing Affidavit of Service could easily be forgotten, as they were, at these times of stress." *Id*.  However, Plaintiff's counsel "has failed to explain why these circumstances precluded service from occurring during the allotted 120-day period." *McGhee v. Delos Santos*, 06-00014, 2006 WL 3804694, at *1 (D. Guam Dec. 22, 2006) (declining to find good cause where plaintiff made a bare assertion that her own personal illness and her need to care for her terminally ill mother was good cause for her failure to effect timely service).  Absent such an explanation, the Court declines to find that good

---

[3] Plaintiff's counsel admits that Dr. Wolf has not been properly served.  Pl.'s Opp. Mem. 2.  He further states that he did not know Dr. Wolf's address at the commencement of the action but subsequently learned that Dr. Wolf resided in Virginia and asked his process server to serve Dr. Wolf at his Virginia address.  However, Plaintiff explains that the process server was unable to effectuate personal service upon Dr. Wolf and returned a Non-Service Affidavit. *Id*. at 1.

cause has been established. *McGhee*, 2006 WL 3804694, at *1 (citing *Vannoni v. TSO,* 120 F.R.D. 501, 503-04 (E.D. Pa. 1988) (declining to find good cause in light of illness of plaintiff's counsel when plaintiff "neither explained the nature of that illness nor how that illness contributed to an impossibility to make service," and added that "an illness so serious as to prevent so unstrenuous an effort as service of a complaint should have prompted the plaintiffs' counsel to withdraw from representation so that the plaintiffs could secure counsel who would be in a position to represent their interests effectively.")); *cf.*, *LeMaster v. City of Winnemucca,* 113 F.R.D. 37, 39 (D. Nev. 1986) (plaintiff's counsel's illness requiring chemotherapy and radiation treatments and hospitalization up to three days per week constituted good cause for 17-day delay in service).

Furthermore, the Court's records indicate that Plaintiff's counsel took no steps to request an extension of time to serve Dr. Wolf, even after he was put on notice of the service defect on six separate occasions, including notice in open court, over the course of sixteen months (July 2011, August 2011, April 2012, May 2012, September 2012 and November 2012). *See generally Allianz Ins. Co. v. Otero*, 01 Civ. 2598 (LMM) (HBP), 2003 WL 262335, at *4 (S.D.N.Y. Jan. 30, 2003) (failing to find good cause where plaintiff "never made a motion to extend the time for proper service within the original 120 days even though it was on notice of the service defect from the defendants' Answer.").

    B.  Discretionary Extension of Time

Even though Plaintiff has not shown good cause, it is still within the Court's discretion to grant an extension of time to accomplish service. *Zapata v. City of New York*, 502 F.3d 192, 193 (2d Cir. 2007) ("We join several other circuits and hold that district courts may exercise their discretion to grant extensions under Rule 4(m) absent a showing of good cause under certain

circumstances."). In determining whether a discretionary extension is appropriate in the absence of good cause, courts in this Circuit generally consider four factors: "(1) whether any applicable statutes of limitations would bar the action once re-filed; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service." *DeLuca*, 695 F. Supp. 2d at 66 (collecting cases).

With respect to the first factor, the statute of limitations applicable to Title VII would likely bar Plaintiff from re-filing the action against Dr. Wolf. A Title VII action "must be commenced within ninety days of receipt of a right to sue letter from the EEOC." *Jordan v. Forfeiture Support Associates*, 11 Civ. 3001 (KAM) (JO), 2013 WL 828496, at *9 (E.D.N.Y. Mar. 5, 2013) (citation and internal quotation marks omitted). Here, Plaintiff timely filed her federal Complaint within the 90-day limitations period applicable to Title VII. Yet, a dismissal of the Amended Complaint, even without prejudice, would likely render any subsequent action against Dr. Wolf time-barred under the applicable statute of limitations. The Second Circuit has held that "in instances where a [Title VII] complaint is timely filed and later dismissed, the timely filing of the complaint does not 'toll' or suspend the 90–day limitations period." *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir. 1993); *see also Baptiste v. Create Young Adult Ctr.*, 11 Civ. 4474 (NRB), 2012 WL 3834664, at *2 (S.D.N.Y. Aug. 22, 2012) ("[A]s more than 90 days have passed since the EEOC issued its right-to-sue letter . . . while plaintiff may still pursue his NYSHRL and NYCHRL claims in state court, he is likely time-barred from pursuing his federal claims in a new action."). However, the Second Circuit has clarified that the "statute of limitations for the underlying claim is tolled during the one hundred twenty-day period set forth in Rule 4(m)." *Jordan*, 2013 WL 828496, at *9 (quoting *Frasca v. United States,* 921 F.3d

450, 453 (2d Cir. 1990)) (internal quotation marks omitted).  "If service is not complete by the end of the 120 days, however, the governing statute of limitations again becomes applicable, and the plaintiff must refile prior to the termination of the statute of limitations period." *Id*. (citation and internal quotation marks omitted).  Accordingly, the 120-day service period, rather than the filing of the Complaint, tolls the 90-day statute of limitations under Title VII.  *Id*.  Plaintiff here filed her Complaint on the seventy-seventh day after she received a right-to-sue letter from the EEOC.  Thereafter, the remaining time on the limitations period—thirteen days—remained suspended during the 120-day period for service under Rule 4(m).  *See id*. at 10.  Upon completion of the 120-day tolling period on August 30, 2011, the limitations period again became applicable and ran for the remaining thirteen days of the limitations period.

Accordingly, the 90-day statute of limitations for Plaintiff's claims expired on September 12, 2011, and any action filed thereafter would be time-barred.  However, the Court notes that Plaintiff would not be without remedy because she may still proceed against Imagimed and Kenny.  Nonetheless, the fact that the statute of limitations would prevent Plaintiff from refiling her complaint against Dr. Wolf weighs in favor of the Plaintiff in the Rule 4(m) analysis.  *Id*.; *Singh v. Maresco*, 04 Civ. 1439 (JG), 2007 WL 2471690, at *6 (E.D.N.Y. May 23, 2007), *report and recommendation adopted,* 04 Civ. 1439 (JG), 2007 WL 2471685 (E.D.N.Y. Aug. 30, 2007) ("Courts have consistently considered the fact that the statute of limitations has run on a plaintiff's claim as a factor favoring the plaintiff in a Rule 4(m) analysis" quoting *AIG Managed Market Neutral Fund v. Askin Capital Management, L.P.,* 197 F.R.D. 104, 109 (S.D.N.Y. 2000)).

As to the second factor, the proffered evidence indicates that Dr. Wolf had actual notice of the claims against him by no later than July 7, 2011, when his attorney noted in his affirmation

to the Motion to Dismiss that Dr. Wolf had not been served with the Summons and Verified Complaint. Doc. 8, ¶ 5. This factor also favors Plaintiff. The third factor is inapplicable and does not favor granting Plaintiff an extension of time to serve. Dr. Wolf has not attempted to conceal the defect in Plaintiff's service and in fact has informed Plaintiff of this error on at least five separate occasions. Finally, the fourth factor favors Plaintiff because Dr. Wolf has failed to assert that an extension of time to serve would result in prejudice to him. Considering all of the above factors in tandem and the general preference for deciding cases on the merits, the Court would ordinarily be persuaded to exercise its equitable discretion to extend Plaintiff's time to serve Dr. Wolf. *DeLuca*, 695 F. Supp. 2d at 67 (citing *Cody v. Mello,* 59 F.3d 13, 15 (2d Cir. 1995) (discussing the preference for deciding cases on the merits)).

However, as Dr. Wolf correctly notes, "Although under different circumstances [dismissal of claims against a defendant due to the running of the statute of limitations] might warrant an extension of time for Plaintiff to effectuate service, where, as here, Plaintiff has made no effort whatsoever to comply with the Rules governing service, dismissal is the appropriate result." Def.'s Mem. 5. Indeed, on July 7, 2011, when Defendant's counsel first advised Plaintiff's counsel that Dr. Wolf had not been served, 1 month and 19 days remained on Plaintiff's Rule 4(m) 120-day deadline. Further, on August 8, 2011, with 22 days remaining on the Rule 4(m) deadline, Defendants filed an Answer to the Amended Complaint, which contained as a First Affirmative Defense that "Plaintiff never served her Summons, Verified Complaint, and Verified Amended Complaint upon [Dr.] Wolf." Doc. 18, ¶ 9. Moreover, the fact that Plaintiff's counsel was actively engaged with the care of his wife and daughters, while certainly unfortunate, "does not excuse him from inquiring as to the status of service in the instant case . . . At the very least, time remained to make a timely request of the Court for an

extension. Yet, there is no evidence that such a request was made as to the Moving Defendant[]." *Hertzner v. U.S. Postal Serv.*, 05 Civ. 2371 (DRH) (ARL), 2007 WL 869585, at *5 (E.D.N.Y. Mar. 20, 2007); *see also Am. Commercial Barge Line Co. LLC v. Tug JOAN SALTON*, 2001 WL 262724, at *5 (S.D.N.Y. 2001) (dismissing claim for untimely service where statute of limitations prevented re-filing and where plaintiff had failed to seek an extension of time to serve); *Singh*, 2007 WL 2471690, at *8 (dismissing claim against one defendant for untimely service where statute of limitations prevented re-filing, where plaintiff had failed to show good cause for delayed service, and where plaintiff could continue the case against other defendants); *Nobriga v. Dalton*, 94 Civ. 1972 (SJ), 1996 WL 294354, at *3 (E.D.N.Y. May 28, 1996) (dismissing case for untimely service where statute of limitations prevented re-filing and where defendants highlighted insufficient service in their answer and plaintiff failed to cure the defect).

    Plaintiff in response, without citing to any legal authority, merely states:

> The [C]ourt should weigh the pros and cons of whether to grant an extension and should consider the fact that no prejudice would come to the defendant if the extension were granted. The opposite is true if dismissal were granted as the plaintiff lost a necessary party.

Pl.'s Opp. Mem. 3. Plaintiff's response is insufficient to convince the Court that it should exercise its discretionary authority to extend the time to serve Dr. Wolf. Accordingly, the Court declines to extend Plaintiff's time to effect service on Dr. Wolf.

### III. Conclusion

For the foregoing reasons, Dr. Wolf's motion to dismiss is GRANTED. The Clerk's Office is respectfully directed to (1) terminate this motion (Doc. 38) and to (2) terminate Dr. Wolf as a defendant in this action.

SO ORDERED.

Dated:   May 30, 2013
         White Plains, New York

_____
Edgardo Ramos, U.S.D.J.